## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| S.K., INDIVIDUALLY<br>AND ON BEHALF OF MINORS<br>C.G.1, C.G.2, and C.G.3,<br><br>and<br><br>N.G., INDIVIDUALLY<br><br>     D.C. KinCare Alliance<br>     1101 Connecticut Avenue NW, Suite 450<br>     Washington, D.C. 20036<br><br>          Plaintiffs<br><br>v.<br><br>THE DISTRICT OF COLUMBIA<br>     One Judiciary Square<br>     441 Fourth Street, NW<br>     Washington, D.C. 20001<br><br>     SERVE:<br><br>     MURIEL BOWSER<br>     Mayor of the District of Columbia<br>     1350 Pennsylvania Avenue, NW, 4th Fl.<br>     Washington, D.C. 20004<br><br>     KARL RACINE<br>     Attorney General for DC<br>     441 4th Street NW, Suite 630 South<br>     Washington, DC. 20001<br><br>and<br><br>DC CHILD AND FAMILY SERVICES AGENCY<br>     BRENDA DONALD, Director<br>     200 I Street, SE<br>     Washington, DC 20003<br><br>          Defendants | Civil Action No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

## I. PRELIMINARY STATEMENT

1.    The District of Columbia is obligated under federal and D.C. law to safeguard children's health and well-being, and to take necessary and appropriate steps to ensure that abused or neglected children who cannot be protected from harm in their home are placed in a safe environment and provided assistance, including financial support. Specifically, if the District of Columbia, through its agency, the Child and Family Services Agency ("CFSA") (collectively, the "Defendants"), determines that a child has been neglected or abused and cannot be protected in the home by the provision of services, CFSA must remove the child from the unsafe home. Unless a parent consents to removal, CFSA must petition the Family Division of the D.C. Superior Court ("D.C. Family Court") to initiate a neglect case and seek custody of the child so that the child can be placed in foster care.

2.    CFSA must consider giving preference to an adult relative over a non-related caregiver when placing a child in foster care, regardless of whether the relative lives in D.C. or another state. When CFSA seeks to place a child in another state, CFSA is required to obtain approval for the placement from the local family services agency.  To obtain such approval, CFSA must notify the local family services agency of the proposed placement, which will prompt such agency to conduct an assessment to ensure the placement is not contrary to the child's best interest. The local family services agency will notify CFSA if the placement has been approved, and only after receiving this approval can CFSA effect the out-of-state placement.

3.    Once CFSA has placed a child in another state, the local family services agency is responsible for periodically monitoring the placement. CFSA, however, continues to be responsible for all matters related to the custody, supervision, care, treatment and disposition of

the child.  Pursuant to this responsibility, CFSA is required to provide services to the child to help

to ensure their continued health, safety, and overall well-being, as well as foster care maintenance

payments to the child's caregiver to help alleviate the financial burden of caring for the child.

4.      Despite these requirements, Defendants, for at least the last 10 years, have consistently and

repeatedly engaged in the custom and practice of kinship diversion,[1] whereby Defendants

informally remove children from the custody of their parents and place them in the care of a

relative caregiver, rather than placing the child in foster care with that same relative.  Unlike foster

children and foster parents, Defendants do not provide diverted children and their relative

caregivers with any services or foster care maintenance payments. By ignoring the legally-required

removal and placement procedures, Defendants avoid the legal and financial responsibilities to

support these children and their relative caregivers.  Indeed, on information and belief, Defendants

have adopted this custom and practice of kinship diversion to relative caregivers, and now use it

routinely, *precisely to avoid those responsibilities*. The use of kinship diversion rather than kinship

foster care placement deprives both child and caregiver of their rights to assistance, in violation of

the United States Constitution, and federal, D.C., Maryland, and Texas law.

5.      Plaintiffs C.G.1 and C.G.2, 12-year-old twin girls, and C.G.3, an 11-year-old boy,[2] are the

biological children of their father C.A.G. ("C.A.G."), and their mother T.C. ("T.C."), who died in

2014.  Following T.C.'s death, C.A.G. has been unable to provide C.G.1, C.G.2 and C.G.3 with

---

[1] Kinship diversion is also referred to as "hidden foster care." *See* Josh Gupta-Kagan, *America's Hidden Foster Care System*, 72 Stan. L. Rev. (forthcoming 2020), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3437849.

[2] Pursuant to Rule 5.2(a) of the Federal Rules of Civil Procedure and Rule 5.4(f) of the Local Rules of the U.S. District Court for the District of Columbia, all minor Plaintiffs are identified by their initials. Plaintiffs have filed a motion and accompanying memorandum requesting leave of the Court for both adult Plaintiffs and C.G.1, C.G.2, and C.G.3's biological parents to be identified anonymously and for all Plaintiffs' residential addresses to be substituted with the address of their counsel, DC KinCare Alliance.

necessary and adequate care due to mental health issues and housing instability, resulting in the neglect of C.G.1, C.G.2 and C.G.3. In March 2019 C.G.1, C.G.2 and C.G.3 tried to harm themselves and were hospitalized. As a result of this incident, Defendants removed C.G.1, C.G.2 and C.G.3 from their father's home and informally and illegally placed them through kinship diversion in the care of their maternal aunt who lived in Texas, Plaintiff N.G. (hereinafter "N.G."). Defendants deliberately did not inform N.G. of her option to become a licensed foster parent for C.G.1, C.G.2, and C.G.3, and instead pressured N.G. into filing an emergency motion for custody of the children.  Further, Defendants failed to notify and obtain approval for the placement from the Texas Department of Family Services.

6.      N.G. cared for the children from March 25, 2019 until June 27, 2019.  During that time, Defendants failed to provide any support or services to the children or N.G., including development of a case plan to reunify C.G.1, C.G.2, and C.G.3 with their father and services to protect the health and safety of C.G.1, C.G.2, and C.G.3.  Of particular concern, Defendants failed to provide any mental health support or services to C.G.1, C.G.2, and C.G.3.  Further, Defendants failed to make foster care maintenance payments to N.G. on behalf of C.G.1, C.G.2, and C.G.3. Because of these failures, N.G. struggled to care for the children who suffer from serious mental health, medical, and educational issues.

7.      On June 27, 2019, N.G. notified Defendants that she could no longer care for C.G.1, C.G.2, and C.G.3.  Rather than providing services to N.G. or taking responsibility for the children as required, Defendants pressured N.G. to find another relative to care for the children by threatening to bring a neglect case against her if she failed to do so. By pressuring N.G. to find another relative to care for the children, Defendants caused C.G.1, C.G.2, and C.G.3 to be removed from N.G.'s home and informally and illegally placed through a second kinship diversion in the care of the

children's maternal great-grandmother who lives in Maryland, Plaintiff S.K. (hereinafter "S.K.").
Defendants never informed S.K. of her option to become a licensed foster parent for C.G.1, C.G.2,
and C.G.3. Further, Defendants failed to notify and obtain approval for the placement from the
Maryland Social Services Administration.

8.      S.K. has continued to care for the children on a daily basis since Defendants caused the
second kinship diversion on June 27, 2019. Defendants have failed to provide any support or
services to the children or S.K., including development of a case plan to reunify C.G.1, C.G.2, and
C.G.3 with their father and services to address the children's mental health, medical, and
educational issues. Further, Defendants have failed to make foster care maintenance payments to
S.K. on behalf of C.G.1, C.G.2, and C.G.3.

9.      Defendants' failures have resulted in withheld foster care support services and financial
losses from foster care maintenance payments that otherwise would have been paid in the amount
of approximately $10,260 for N.G. and approximately $27,360 to date, for S.K., as well as other
amounts to be determined at trial.

10.     As a direct consequence of Defendants' conduct, C.G.1, C.G.2, C.G.3, N.G., and S.K.
(collectively, the "Plaintiffs") have been and continue to be denied the full services, economic
benefits and other rights to which they are entitled under federal, D.C., Maryland, and Texas law.

11.     Moreover, Defendants have violated federal and D.C. law by discriminating against
Plaintiffs by treating relative caregivers and the children under their care differently and less
supportively than Defendants treat children placed with non-relative caregivers.

12.     This action seeks declaratory and injunctive relief, as well as damages, to redress the
violations of federal, D.C., Maryland, and Texas law.

## II. JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and 42 U.S.C. § 1983 because this action arises under the Constitution and the laws of the United States. Specifically, this action arises under Title IV-E of the Social Security Act, 42 U.S.C. §§ 670-679c ("Social Security Act"), and the Fifth and Fourteenth Amendments to the United States Constitution.

14.     Plaintiffs' claims for declaratory relief and damages are authorized by 28 U.S.C. §§ 2201-2202 and 42 U.S.C. § 1983, and by the inherent powers of this court in law and in equity.

15.     This Court also has supplemental jurisdiction over Plaintiffs' pendent state law claims under 28 U.S.C. § 1367.

16.     Venue is proper under 28 U.S.C. §1391(b)(2) because all of the events and omissions giving rise to Plaintiffs' claims occurred in D.C.

## III. PARTIES

17.     Plaintiffs C.G.1, C.G.2, and C.G.3 are minor children who were removed from the custody of their biological father and placed via kinship diversion first in the care of their aunt, N.G., and second in the care of their great-grandmother, S.K.  Prior to CFSA's unlawful kinship diversions, C.G.1, C.G.2, and C.G.3 were residents of DC.

18.     As the legal custodian of C.G.1, C.G.2, and C.G.3, Plaintiff S.K. brings this action on her own behalf and on behalf of C.G.1, C.G.2, and C.G.3.  Plaintiff S.K. has been a resident of Maryland at all relevant times.

19.     Plaintiff N.G. brings this action on her own behalf.  Plaintiff N.G. has been a resident of Texas and Maryland at all relevant times.

20.     Plaintiffs are citizens of the United States.

21.     Defendant District of Columbia is the government of D.C. Defendant District of Columbia operates and has oversight over Defendant CFSA.

22.     Defendant CFSA is a cabinet-level agency of the District of Columbia charged with administering the foster care system and ensuring the safety and well-being of children residing within D.C. CFSA is responsible both for responding to and investigating reports of child abuse and neglect and for removing and placing neglected or abused children who cannot be protected in their own home.

### IV. FEDERAL AND STATE LAW GOVERNING DISTRICT OF COLUMBIA'S OBLIGATIONS TO ABUSED AND NEGLECTED CHILDREN AND THEIR CAREGIVERS

23.     By acting through CFSA to effect kinship diversions without following the legally required procedures for removal and foster care placement, Defendant District of Columbia has violated and continues to violate the Social Security Act, the D.C. Prevention of Child Abuse and Neglect Act of 1977 ("D.C. Child Abuse and Neglect Act"), the Interstate Compact on the Placement of Children ("Interstate Placement Compact"), the D.C. Human Rights Act of 1977 ("D.C. Human Rights Act"), and the Fifth and Fourteenth Amendment rights of the Plaintiffs.

24.     By effecting kinship diversions without following the legally required procedures for removal and foster care placement, Defendant CFSA has violated and continues to violate the Social Security Act, the D.C. Child Abuse and Neglect Act, the Interstate Placement Compact, the D.C. Human Rights Act, and the Fifth and Fourteenth Amendments of the United States Constitution.

### A.     Obligations Under The Federal Social Security Act

25.     The Social Security Act establishes a federal-state grant program that is designed to ensure that abused and neglected children who cannot be protected from harm in their homes are placed

in a safe and stable environment until those children are able to return home safely or are placed in another permanent living arrangement.

26.    The Social Security Act requires any "State"[3] that opts to receive Title IV funds to have a plan approved by the Secretary of the U.S. Department of Health and Human Services, and to agree to administer its foster care program in accordance with the statutory requirements and implementing regulation, which, in pertinent part –

    (a)    require that reasonable efforts be made to preserve and reunify families by seeking to prevent or eliminate the need for removing the child from their home prior to placement in foster care and to make it possible for the child to safely return to their home, and, if the family cannot safely be reunified, require that steps be taken to finalize a permanent placement for the child, 42 U.S.C. § 671(a)(15)(B)-(C);

    (b)    require that the removal of a child from their home is in accordance with a judicial determination that continuation in the home would be contrary to the welfare of the child or with a voluntary placement agreement, and require that the child is placed in a foster family home or child care institution that meets the standards for foster family homes or child care institutions and has been licensed or approved by the State, 42 U.S.C. §§ 671(a)(10), 672(a)(2), 672(c);

    (c)    require that due diligence be exercised to provide notice to adult relatives within 30 days of effecting a removal, which, *inter alia*, must "explain[] the options the relative has under Federal, State, and local law to participate in the care and placement of the child, including any options that may be lost by failing to respond to the notice" and "describe[] the requirements…to become a foster family home

---

[3] Under the Act, the term "State" includes the District of Columbia. 42 U.S.C. § 603(b)(7).

and the additional services and supports that are available for children placed in such a home," 42 U.S.C. § 671(a)(29);

(d)     require that children in foster care receive quality services to protect their health and safety, 42 U.S.C. § 671(a)(22);

(e)     require that foster care maintenance payments[4] be made on behalf of each child who has been removed from their home, if the child "would have met the [TANF][5] eligibility requirements" prior to being removed, 42 U.S.C. § 672(a)(1);

(f)     provide for the development of a "case plan" for each child in foster care that, *inter alia*, ensures that services are provided to the child, parents and caregivers in order to "facilitate return of the child to his own safe home or the permanent placement of the child, and address the needs of the child while in foster care" and includes the child's health and education records,  42 U.S.C. §§ 671(a)(16), 675(1);

(g)     require that each case plan be reviewed at least every six months by a court or administrative body under the State's "case review system" to assess, *inter alia,* the child's safety, the continuing need for and appropriateness of the placement, and the likely date by which the child may be safely returned to their home or be placed for adoption or legal guardianship, 42 U.S.C. §§ 671(a)(16), 675(5);

---

[4] Foster care maintenance payments are defined as payments which "cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement." 42 U.S.C. § 675(4)(A).

[5] TANF, which stands for Temporary Assistance for Needy Families, is a federal program that provides assistance to families with children when the parents or other responsible relatives cannot provide for the family's basic needs.

(h)     require that a case plan set forth the reasons why a child's placement in an out-of-state foster family home is in the best interests of the child, 42 U.S.C. § 675(5)(A)(i)(a); and

(i)     require that a caseworker "periodically, but not less frequently than every 6 months" visit each child "placed in foster care outside the State in which the home of the parents of the child is located" and prepare a report of such visit. 42 U.S.C. §§ 671(a)(16), 675(5)(A)(ii).

27.     District of Columbia has opted to receive Title IV-E funds and, accordingly, is bound by each of the foregoing requirements with respect to the provision of benefits and services to each abused and neglected child.

**B.     Obligations Under D.C. Child Abuse and Neglect Act**

28.     The D.C. Child Abuse and Neglect Act provides that CFSA shall, *inter alia*: (i) receive and respond to reports of child abuse and neglect;[6] (ii) when necessary, remove children from their homes; (iii) ensure that children who have been abused or neglected are protected from further experiences and conditions detrimental to their healthy growth and development; (iv) obtain substitute care for a child whose parents are unable to meet the child's minimum needs; (v) provide services and resources to abused and neglected children and their families, including services aimed at safely reuniting the family as quickly as possible; and (vi) ensure timely permanent

---

[6] Under the D.C. Child Abuse and Neglect Act, child abuse includes the infliction of physical or mental injury upon a child, sexual abuse or exploitation of a child, and the negligent treatment or maltreatment of a child. D.C. Code § 16-2301(23)(A). A neglected child is, *inter alia*, a child who is without proper parental care or control, subsistence, education or other care necessary for his or her physical, mental, or emotional health, and a child whose parent, guardian, or custodian is unable to discharge his or her responsibilities to and for the child because of incarceration, hospitalization, or other physical or mental incapacity. § 16-2301 (9)(A)(ii) and (iii).

placement of the child where reunification is not possible. D.C. Code § 4-1303.01a. *See also* § 4-1303.03 *et seq.*

29.     Pursuant to its responsibility to receive and respond to reports of child abuse and neglect, CFSA is required to "conduct a thorough investigation of a report of suspected child abuse or neglect to protect the health and safety of the child or children when . . . [CFSA] suspects a child is at imminent risk of or has experienced abuse or neglect that [CFSA] determines to be severe." § 4-1301.04(a)(1). The investigation must determine "the nature, extent, and cause of the abuse or neglect, if any." § 4-1301.06(a)-(b)(1).[7] If the suspected abuse or neglect is substantiated, CFSA shall determine whether there is any child in the home whose health, safety, or welfare is at risk and whether any child who is at risk should be removed from the home or can be protected by the provision of resources. § 4-1301.06(b)(3).

30.     When a report of child abuse or neglect is substantiated and CFSA determines the child cannot be "adequately protected" while living in the parental home through the provision of services, CFSA is only authorized to: "(1) Remove the child with the consent of the parent, guardian, or person acting in loco parentis; (2) Request the Corporation Counsel of the District of Columbia to petition the [D.C. Family Court] for a finding of abuse or neglect and, where appropriate, the removal of the child; and (3) Request the police to remove the child when the consent of a parent, guardian or other custodian cannot be obtained and the need to protect the child does not allow sufficient time to obtain a court order." § 4-1303.04(c).

31.     Once CFSA has removed a child from their home, CFSA is required to place the child with a licensed or approved foster parent, regardless of whether the foster parent lives in DC or another

---

[7] While CFSA is permitted 30 days to complete a full investigation, oftentimes the abuse or neglect is readily apparent and is effectively substantiated when the social worker arrives at the scene.

state. §§ 4-217.02, 16-2313. For each child who is removed to foster care, CFSA must provide monetary benefits to the foster parent on behalf of the child if the child is eligible for TANF and certain other criteria are satisfied. § 4-217.01. Although the statute prescribes certain eligibility requirements, CFSA's policy is to make "resource payments" on behalf of all children in the foster care system. *See, e.g.*, CFSA, *Resource Parent Handbook* 93–95 (2018).

32.    In addition, CFSA must prepare a case plan for the child and family and must take such steps (including, but not limited to, providing or arranging for appropriate services to the child and family) as are needed for the protection of the child and the preservation, rehabilitation and, when safe and appropriate, reunification of the family. D.C. Code § 4-1301.09(b). *See also* § 4-1301.02(3) (defining "case plan"). The case plan must include the child's health and education records, and CFSA is required to assist foster parents in obtaining personal records for foster children, including immunization records, birth certificate, social security card, or health insurance card. § 4–1301.02(3)(C); D.C. Mun. Reg. § 29-6003; CFSA, *Relationship with Resource Parents Policy*, (effective Aug. 7, 2004).

33.    CFSA must also ensure that the status of each child in foster care is reviewed periodically. D.C. Code § 4-1301.09(d). This review shall determine the safety of the child, the continuing necessity for and appropriateness of the placement, the extent of compliance with the case plan, the extent of progress towards alleviating or mitigating the causes necessitating foster care, and a projected date for returning the child safely to the home or placing the child for adoption or other permanent placement. § 4-1301.09(e)(1).

34.    CFSA is required to make reasonable efforts to make it possible for a child in foster care to return safely to their home. § 4-1301.09a(b). In making such reasonable efforts, "the child's safety and health shall be the paramount concern." § 4-1301.09a(a). *See also* § 4-1303.03(d). If

such reasonable efforts "are determined to be inconsistent with the child's permanency plan, [CFSA] shall make reasonable efforts to place the child in accordance with the child's permanency plan and to complete whatever steps are necessary to finalize the child's permanent placement." § 4-1301.09a(c).

35.     The requirements for placement and provision of benefits and services to children who have been removed from their homes apply regardless of whether the child is placed with a relative or non-relative caregiver and regardless of whether the child is placed in D.C. or another state.

**C.     Obligations Under the Interstate Placement Compact**

36.     The Interstate Compact on the Placement of Children is a uniform law that was enacted by all 50 states and D.C. to ensure the protection of, and provisions of services to, children who are placed across state lines.  In particular, the Interstate Placement Compact ensures that children who are placed in a home in another state are afforded the same protections and benefits that they would have received if they had been placed within DC. *See* CHILD AND FAMILY SERVICES AGENCY, POLICY TITLE: INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN (ICPC) (Rev. July 2, 2010) ["CFSA ICPC Policy"] The Interstate Placement Compact applies anytime Defendants "send…or cause to be sent" a child for placement in another state, including placements in foster care, kinship homes, and placements with a relative authorized by the DC Superior Court. D.C. Code § 4–1422 (art. I); Md. Code Ann. § 5-603; Tex. Code Ann. § 162.102 (art. I). *See also* CFSA ICPC Policy.

37.     When CFSA proposes to send or cause to be sent a child into another state for placement in foster care, CFSA is required to provide notice to the local family services agency.  D.C. Code § 4–1422 (art. III); Md. Code Ann. § 5-604; Tex. Code Ann. § 162.102 (art. III).  Such notice must include the identity of the child, the proposed foster parents, and a "full statement of the reason for the proposed action and evidence of the authority for the proposed placement." *Id.*  By providing

this notice, CFSA triggers the local family services agency to conduct an assessment of the proposed placement to ensure the foster parents meet the applicable state standards for placement. *See* CFSA ICPC Policy.  Following this assessment, the local family services agency will notify CFSA in writing that the "proposed placement does not appear to be contrary to the interests of the child" and receipt of this approval is a condition precedent for CFSA's out-of-state placement of the child. *Id.* CFSA ICPC Policy makes clear that "an ICPC Home Study request and placement approval is required before a parent, kinship, foster, or adoptive placement in another state" and CFSA cannot place a child in another state unless the placement is with a "resource provider [who] is fully licensed, certified or approved for the placement of that child." CFSA ICPC Policy. *See also* Border Agreement Between the State of Maryland, Department of Human Resources and The District of Columbia, Child and Family Services Agency.

38.     Once CFSA has placed a child in another state, CFSA retains legal and financial responsibility of the child. In particular, CFSA retains jurisdictions over "all matters that relate to the custody, supervision, care, treatment, and disposition of the child that it would have had if the child had remained in [DC]" and continues to bear "financial responsibility for the support and maintenance of the child during the period of the placement." D.C. Code § 4–1422 (art. V); Md. Code Ann. § 5-606; Tex. Code Ann. § 162.102 (art. V).

39.     CFSA also retains the authority to "effect or cause the return of the child or its transfer to another location and custody pursuant to law." Md. Code Ann. § 5-606; Tex. Code Ann. § 162.102 (art. V). In particular, if the out-of-state placement proves to no longer be in the child's best interest, CFSA is required to "make arrangements to ensure the return of the child to [DC]." CFSA ICPC Policy.

40.    CFSA is prohibited from sending or causing to be sent a child for placement in foster care in a manner that violates the requirements of the Interstate Placement Compact or applicable laws governing the placement of children in the state the child is being placed in. D.C. Code § 4–1422 (art. III); Md. Code Ann. § 5-604; Tex. Code Ann. § 162.102 (art. III). Any such violation constitutes both a violation of D.C. law and the laws of the state the child is placed in.  D.C. Code § 4–1422 (art. IV); Md. Code Ann. § 5-605; Tex. Code Ann. § 162.102 (art. IV).

**D.    Obligations Under D.C. Human Rights Act**

41.    The D.C. Human Rights Act states that it is "an unlawful discriminatory practice for a District government agency or office to limit or refuse to provide any facility, service, program, or benefit to any individual on the basis of an individual's actual or perceived: . . . familial status."[8] § 2-1402.73.

42.    Pursuant to the D.C. Human Rights Act, CFSA may not unlawfully discriminate against diverted children and their relative caregivers by refusing to provide them with foster care benefits and services on the basis of familial status. Instead, CFSA must provide diverted children placed with relative caregivers who are seeking, or who already have, legal custody of those children the same services and support as it provides to foster families.

## V. CUSTOM AND PRACTICE OF REMOVAL AND INFORMAL PLACEMENT THROUGH KINSHIP DIVERSION

43.    Because Defendants receive money under Title IV-E of the Social Security Act, Defendants must operate the D.C. foster care program in accordance with the requirements under

---

[8] The term 'familial status' is defined as "one or more individuals under 18 years of age being domiciled with: (1) a parent or other person having legal custody of the individual; or (2) the designee, with written authorization of the parent, or other persons having legal custody of individuals under 18 years of age. The protection afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or in the process of securing legal custody of any individual under 18 years of age." § 2-1401.02(11A).

the Act, as well as the requirements under the D.C. Child Abuse and Neglect Act and the Interstate Placement Compact. Although receipt of these funds requires such compliance, Defendants' custom and practice of kinship diversions is in blatant violation of those statutes.

44.     As discussed above, when CFSA determines a neglected or abused child must be removed from their home, CFSA is only authorized to do so if CFSA obtains a judicial determination or parental consent to effect the removal, or requests the police to remove the child because there is insufficient time for CFSA to petition for removal. § 4-1303.04(c).  These removal requirements "protect[] the integrity of established family units" and apply regardless of whether the child is placed with a relative or non-relative foster parent. *Miller v. Youakim*, 440 U.S. 125, 139 (1979).

45.     Once the child has been removed from their home, the child must be placed in a licensed foster family home or licensed child care institution.  CFSA has a formal procedure for placing the child with a foster parent in another state which requires CFSA to obtain approval for the placement from the local family services agency, regardless of whether the placement is with a relative or non-relative caregiver. D.C. Code § 4–1422 (art. III); Md. Code Ann. § 5-604; Tex. Code Ann. § 162.102 (art. III).  These approval requirements ensure "protection and services to children who are placed across state lines" and entitles both the foster parent and foster child to the same services and benefits afforded to children in foster care placements within DC.  CFSA ICPC Policy.

46.     Despite the fact that there are legally established procedures and requirements for effecting an out-of-state placement with a relative caregiver, CFSA has instead adopted the custom and practice of informally and illegally placing abused and neglected children with relatives in another state through *kinship diversion*, without obtaining the required approvals for the placement.

Specifically, after CFSA has substantiated[9] a report of child abuse or neglect and determined the child cannot be protected in their home through the provision of services, CFSA will contact a relative to see if they are willing to care for the child. If CFSA identifies a willing relative that is available to care for the child, CFSA deliberately ignores its responsibility to inform the relative of their option to have the child be placed with them through the Interstate Placement Compact procedures. Instead, CFSA typically directs or pressures the relative to file an emergency motion for legal and physical custody, including by threatening to place the child in foster care with a stranger if the relative does not agree to do so. Through such actions, CFSA informally and illegally removes and places the child with an out-of-state relative through kinship diversion, to avoid formally placing the child with that same relative in accordance with applicable law.

47.     CFSA's use of kinship diversion constitutes a *flouting* of D.C., Maryland, and Texas law, because it subverts the formally established procedures for removal and placements and thereby denies diverted children and their relative caregivers the same benefits, services, and protections that foster children and foster parents receive. For example, prior to placing a child with a relative in another state, CFSA is required to, *inter alia*, obtain approval from the local family services agency to ensure the proposed relative caregiver meets the standards for foster parents and that the placement is not contrary to the child's best interest. However, when CFSA effects a kinship diversion, CFSA does not notify the local family services agency or obtain approval for the placement and accordingly, does not ensure the placement is safe or appropriate for the child.

---

[9] When CFSA engages in kinship diversion, the agency does not always accurately record that an allegation against a parent was substantiated, presumably because that would trigger legal requirements under federal and/or D.C. law for removal and placement of a child in licensed foster care if the child cannot remain safely at home.

48.     Furthermore, once the child has been informally placed in a kinship diversion arrangement, CFSA does not monitor the child or provide even minimal post-diversion services or support to the child, birth parent, or relative caregiver. Without CFSA oversight and accountability, the urgent needs of the child (*e.g.*, mental health, medical, and educational services), the birth parent (*e.g.*, mental health or substance abuse treatment, parent education classes), and the relative caregiver (*e.g.*, child care, peer support groups, respite) can go unmet, and there is no process for safely reunifying the child with their parents.[10] Moreover, neither the diverted children nor the relatives responsible for their care receive financial support, such as foster care maintenance payments and vouchers for camps, enrichment programs, or other programs available to foster children. When relative caregivers seek such services or support, CFSA also routinely denies their requests.

49.     Upon information and belief, senior management of CFSA has long knowingly acquiesced to and/or expressly endorsed this custom and practice, which allows CFSA to appear to meet certain statistical targets for reducing the number of children in foster care. These targets are not only arbitrary but provide CFSA with a perverse incentive to use kinship diversion, rather than attempt to obtain the required approvals and place children with out-of-state relatives through formal procedures. The custom and practice of kinship diversion has saved District of Columbia millions of dollars over at least the past 10 years by depriving its most vulnerable residents of resources to which they are legally entitled.

---

[10] The Supreme Court has recognized that parents have a fundamental Constitutional liberty interests in "the care, custody, and control of their children." *Troxell v Granville*, 530 U.S. 57 (2000). Accordingly, when CFSA decides that a child should be removed from the parental home and cared for by a relative without parental consent or a court order, it also violates the parents' constitutional rights.

## VI.  DEFENDANTS' KINSHIP DIVERSION OF CHILDREN VIOLATES FEDERAL AND D.C. LAW

50.     CFSA engaged in kinship diversion when it removed C.G.1, C.G.2, and C.G.3 from their home and informally and illegally placed them in the care of N.G. and then S.K.

51.     Immediately following the death of their mother T.C. in October 2014, C.G.1, C.G.2, and C.G.3 went to live with their father C.A.G. who is a resident of D.C. C.A.G. has had a long history of serious mental health issues, has been hospitalized multiple times for mental health treatment, and has struggled with homelessness, which have adversely impacted his parenting and prevented him from providing C.G.1, C.G.2, and C.G.3 with adequate care. As a result of these issues, C.G.1, C.G.2, and C.G.3 left C.A.G.'s home and went to live with their paternal grandfather from October 2015 to August 2018.

52.     In August 2018, the paternal grandfather disappeared following allegations of sexual abuse of one or more of the children, and C.G.1, C.G.2, and C.G.3 returned to their father's care.

53.     In March 2019, C.G.1, C.G.2, and C.G.3 tried to harm themselves and were hospitalized.

54.     While the children were still hospitalized, CFSA contacted N.G., who was living in Texas, and asked her to take custody of C.G.1, C.G.2, and C.G.3.  CFSA scheduled a family team meeting on March 22, 2019 and N.G. traveled from Texas to DC so she could attend.  During the family team meeting, which included N.G., C.A.G., CFSA social worker Zakia Joyner-Kennedy, and Community Connections Case Manager Danielle Russell, CFSA indicated that the children need to be removed from C.A.G.'s care.  CFSA informed N.G. that she needed to file a motion for emergency custody with the D.C. Superior Court in order to take custody of C.G.1, C.G.2, and C.G.3. CFSA did not inform N.G. of all her options to participate in the children's care, including that CFSA could petition the D.C. Family Court for removal and placement of the children with N.G., despite the fact that such notice is required by law. CFSA's conduct prior to and during the

family meeting demonstrates that CFSA had determined C.G.1, C.G.2, and C.G.3 were in immediate danger and that immediate removal from their home was necessary. Despite making this determination, CFSA did not follow the legally required removal and placement procedures but instead made N.G. responsible for effecting the removal and placement. Relying on CFSA's instruction, on March 25, 2019, N.G. filed a Motion for Emergency Custody of C.G.1, C.G.2, and C.G.3. The D.C. Family Court granted temporary custody of C.G.1, C.G.2, and C.G.3 to N.G. based on C.A.G.'s revocable consent, and shortly thereafter, N.G. returned to Texas with the children.

55.     Because CFSA asked N.G. to take custody of C.G.1, C.G.2, and C.G.3 and directed her to file a motion for emergency custody, CFSA caused C.G.1, C.G.2, and C.G.3 to be placed with N.G. in Texas.  Accordingly, CFSA was required to contact the Texas Department of Family Services and obtain approval for the placement. CFSA, however, intentionally ignored these requirements, and caused the children to be placed in the care of N.G. without receiving the required approval in violation of the terms of the Interstate Placement Compact. Further, CFSA failed to develop a case plan for the children and failed to provide them with any services even though the children suffer from trauma, as well as serious medical, mental health, and educational issues. CFSA also failed to provide any support or financial assistance to N.G.  At all relevant times, C.G.1, C.G.2, and C.G.3 were eligible to receive benefits under the TANF program and, accordingly, N.G. was entitled to receive foster care maintenance payments on behalf of C.G.1, C.G.2, and C.G.3, which amounts to $1,140 per child per 30-day period in 2019.  N.G. did not receive any foster care payments on behalf of C.G.1, C.G.2, and C.G.3 and was forced to shoulder all of the costs of caring for the children, which created a substantial financial and emotional burden for her.

56.    On June 27, 2019, N.G. went to CFSA's offices and stated that she could no longer handle the children's multiple, complex, and varied needs. Instead of making arrangements for C.G.1, C.G.2, and C.G.3, CFSA told N.G. that it would bring a neglect case against her unless she found another relative to care for C.G.1, C.G.2, and C.G.3, effectively requiring N.G. to effectuate another kinship diversion on CFSA's behalf. Pursuant to this instruction, on June 27, 2019, N.G. brought C.G.1, C.G.2, and C.G.3 to live with S.K.

57.    On July 8, 2019, CFSA held a family team meeting during which CFSA told N.G. to transfer custody of the children to S.K. CFSA did not inform S.K. of all her options to participate in the children's care, including that CFSA could petition the D.C. Family Court for removal and placement of the children with S.K., despite the fact that such notice is required by law.  C.A.G. filed a notice of revocation on July 19, 2019. On August 20, 2019, the court vacated the grant of custody to N.G., resulting in C.A.G. having custody of the children as their only living parent.  On September 9, 2019, C.A.G. signed a Custodial Power of Attorney granting S.K. physical custody and the right to make any decisions and obtain any benefits necessary for the welfare of C.G.1, C.G.2, and C.G.3.

58.    By directing N.G. to transfer custody to S.K., CFSA caused C.G.1, C.G.2, and C.G.3 to be placed with S.K. in Maryland.  Accordingly, CFSA was required to contact Maryland's local Department of Social Services and obtain approval for the proposed placement. CFSA, however, intentionally ignored these requirements and caused the children to be placed in the care of S.K. without receiving the required approval in violation of the terms of the Interstate Placement Compact. Further, CFSA has failed to develop a case plan for the children and failed to provide them with any services even though the children suffer from trauma, as well as serious medical, mental health, and educational issues. CFSA has also failed to provide any support or financial

assistance to S.K. At all relevant times, C.G.1, C.G.2, and C.G.3 were eligible to receive benefits under the TANF program and, accordingly, S.K. has been entitled to receive foster care maintenance payments on behalf of C.G.1, C.G.2, and C.G.3, which amounts to $1,140 per child per 30-day period in 2019. S.K. has not received any foster care payments on behalf of C.G.1, C.G.2, and C.G.3 and has been forced to shoulder all of the costs of caring for the children since June 27, 2019. The increased costs of raising the children have resulted in a substantial financial burden for S.K. who is having difficulty paying for rent, utilities, food, and other necessities.

59.    On September 16, 2019, N.G. submitted a written Notice of Claim against D.C. to the D.C. Office of Risk Management. By letter dated September 19, 2019, the D.C. Office of Risk Management acknowledged receipt of N.G.'s Notice of Claim.

60.    On October 1, 2019, S.K, for herself and on behalf of C.G.1, C.G.2, and C.G.3, submitted a written Notice of Claim against D.C. to the D.C. Office of Risk Management. By letter dated October 7, 2019, the D.C. Office of Risk Management acknowledged receipt of S.K.'s Notice of Claim.

## VII.  CLAIMS

### COUNT I:  VIOLATION OF TITLE IV-E OF THE
### SOCIAL SECURITY ACT, 42 U.S.C. §§ 670-679c

61.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

62.    The foregoing actions and inactions of Defendants District of Columbia and CFSA, constitute a deprivation of rights conferred on each of Plaintiffs C.G.1, C.G.2, and C.G.3 by Title IV-E of the Social Security Act, to:

(a)    removal from their home pursuant to a voluntary placement agreement or judicial determination that continuation in the home would be contrary to the welfare of the child, 42 U.S.C. § 672(a)(2);

(b)    placement in a home that meets the standards for foster family homes, and has been licensed or approved by the State, 42 U.S.C. §§ 671(a)(10), 672(c);

(c)    the provision of quality services to protect the child's safety and health, 42 U.S.C. § 671(a)(22);

(d)    a written case plan that describes the type of home in which the child is to be placed, including the safety and appropriateness of the placement, 42 U.S.C. §§ 671(a)(16), 675(1)(A);

(e)    a written case plan that ensures that the child receives safe and proper care while in foster care and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

(f)    a written case plan that ensures provision of services to the child, parents and foster parents in order to facilitate reunification or where that is not possible, the permanent placement of the child, and to address the needs of the child while in foster care and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

(g)    a written case plan that ensures the educational stability of the child while in foster care and implementation of that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(G);

(h)    a written case plan that sets forth the reasons why a child's placement in an out-of-state foster family home is in the best interests of the child, 42 U.S.C. § 675(5)(A)(i)(a);

(i)    a case review system that ensures the child has a case plan designed to achieve placement in a safe and appropriate setting, 42 U.S.C. §§ 671(a)(16), 675(5)(A);

(j)     a case review system in which the status of the child is reviewed no less frequently than every six months by a court, or person responsible for case management, for purposes of determining the safety of the child, the continuing necessity for and appropriateness of the placement, extent of compliance with the case plan and projected date of permanency, 42 U.S.C. §§ 671(a)(16), 675(5)(B), 675(5)(C);

(k)     a case review system in which a caseworker periodically, but not less frequently than every 6 months, visits the children's out-of-state placement and prepares a report of such visit, 42 U.S.C. §§ 671(a)(16), 675(5)(A)(ii); and

(l)     foster care maintenance payments to cover the cost of food, clothing, shelter, daily supervision, school supplies, the child's personal incidentals, liability insurance with respect to the child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement, 42 U.S.C. §§ 671(a)(1), 672(a)(1), 675(4)(A).

63.     Further, the foregoing actions and inactions of Defendants District of Columbia and CFSA, constitute a deprivation of rights conferred on each of Plaintiffs N.G. and S.K. by Title IV-E of the Social Security Act, to:

(a)     receive notice that explains the options the relative has under Federal and D.C. law to participate in the care and placement of the child, including any options that may be lost by failing to respond to the notice, 42 U.S.C. § 671(a)(29);

(b)     receive notice that describes the requirements to become a foster family home and the additional services and support that are available for children placed in such a home, 42 U.S.C. § 671(a)(29); and

(c)    receive foster care maintenance payments on behalf of each child who has been removed from their home and placed in the relative's care to cover the cost of providing food, clothing, shelter, daily supervision, school supplies, the child's personal incidentals, liability insurance with respect to the child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement, 42 U.S.C. §§ 671(a)(1), 672(a)(1), 675(4)(A).

64.    By its acts and omissions, in particular its custom and practice of kinship diversion, Defendants have deprived Plaintiffs of their rights under Title IV-E of the Social Security Act, and thereby caused injury to Plaintiffs, including financial and emotional harm.

65.    Plaintiffs' claim for violation of Title IV-E of the Social Security Act is brought pursuant to 42 U.S.C. § 1983, which affords Plaintiffs a private right of action. Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for such injuries and for the payment of reasonable attorneys' fees, costs, and interest in an amount to be proven at trial.

## COUNT II:  VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

66.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

67.    As averred in Par. 62-63, Defendants, through their custom and practice of kinship diversion, have intentionally deprived Plaintiffs of their rights under the Social Security Act.

68.    Further, through the custom and practice of kinship diversion, Defendants have deprived and continue to deprive C.G.1, C.G.2, and C.G.3 of certain entitlements conferred by the D.C. Child Abuse and Neglect Act and the Interstate Placement Compact to which C.G.1, C.G.2, and C.G.3 have a constitutionally protected interest. These entitlements include the right to:

(a)     be removed from their home once CFSA had determined that the child could not be adequately protected there through the provision of services, and to have such removal be made pursuant to a D.C. Family Court finding of abuse or neglect and removal or the consent of their parents, or by requesting the police to remove if there was insufficient time for CFSA to file a petition, § 4-1303.04(c);

(b)     be placed in a licensed or approved foster care home or facility, regardless of whether such placement was in DC or another state, § 4–217.02;

(c)     receive appropriate services, §§ 4-1301.09(b), 4-1301.02(3);

(d)     receive a case plan and have their status reviewed periodically, §§ 4-1301.09(b), 4-1301.09(d), 4-1301.02(3);

(e)     conduct or arrange for periodic visits of their placement to ensure such placement continued to be in their best interest, 42 U.S.C. §§ 671(a)(16), 675(5)(A)(ii); and

(f)     have monetary support provided by CFSA on their behalf, § 4-217.01, CFSA, *Resource Parent Handbook* 93–95 (2018).

69.     In depriving C.G.1, C.G.2, and C.G.3 of their rights under the Social Security Act, the D.C. Child Abuse and Neglect Act, and the Interstate Placement Compact, Defendants have failed to provide the same procedures, services, and support as Defendants provide to other children who have experienced a similar type and severity of mistreatment. Defendants' discriminatory treatment is not rationally related to advancing any legitimate governmental interest and therefore violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution as applied to D.C. through the Due Process Clause of the Fifth Amendment.

70.     In depriving N.G. and S.K. of their rights under the Social Security Act, Defendants have failed to provide the same procedures, services, and support as Defendants provide to foster parents

caring for children who experienced a similar type and severity of mistreatment. Defendants' discriminatory treatment is not rationally related to advancing any legitimate governmental interest and therefore violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution as applied to D.C. through the Due Process Clause of the Fifth Amendment.

71.     Defendants' acts and omissions complained of herein have caused the violation of Plaintiffs' constitutional rights and caused injury to Plaintiffs, including financial and emotional harm.

72.     Plaintiffs' claim for violation of the Equal Protection Clause of the Fourteenth Amendment is brought pursuant to 42 U.S.C. § 1983, which affords Plaintiffs a private right of action. Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for such injuries and for the payment of reasonable attorneys' fees, costs, and interest in an amount to be proven at trial.

## COUNT III:  VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

73.     Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

74.     As averred in Par. 62 and Par. 68, Defendants, through their custom and practice of kinship diversion, have intentionally deprived C.G.1, C.G.2, and C.G.3 of their rights under the Social Security Act, the D.C. Child Abuse and Neglect Act, and the Interstate Placement Compact to which C.G.1, C.G.2, and C.G.3 have a constitutionally protected interest, without providing an adequate or meaningful opportunity to be heard.

75.     As averred in Par. 63, Defendants, through their custom and practice of kinship diversion, have intentionally deprived N.G. and S.K. of their rights under the Social Security Act, including the right to receive foster care maintenance payments, without providing an adequate or meaningful opportunity to be heard.

76.     In each instance, Defendants deprived Plaintiffs of the rights and entitlements afforded to them under the Social Security Act, D.C. Child Abuse and Neglect Act, and the Interstate Placement Compact without providing an opportunity for a fair hearing, thereby denying Plaintiffs of their right to due process of law.

77.     Defendants' acts and omissions complained of herein have violated the Plaintiffs' rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution and caused injury to Plaintiffs, including financial and emotional harm.

78.     Plaintiffs' claim for violation of the Due Process Clause of the Fifth Amendment is brought pursuant to 42 U.S.C. § 1983, which affords Plaintiffs a private right of action.  Pursuant to 42 U.S.C. § 1983, Plaintiffs are entitled to compensation for such injuries and for the payment of reasonable attorneys' fees, costs, and interest in an amount to be proven at trial.

## COUNT IV:  VIOLATION OF D.C. HUMAN RIGHTS ACT

79.     Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

80.     Under the D.C. Human Rights Act, it is "an unlawful discriminatory practice for a District government agency or office to limit or refuse to provide any facility, service, program, or benefit to any individual on the basis of an individual's actual or perceived . . . familial status...." D.C. Code § 2-1402.73.

81.     CFSA's practice of kinship diversion intentionally discriminates on the basis of familial status.  As averred in Par. 46-48, If, following a determination that a child has been abused or neglected and should be removed from their home, CFSA identifies a relative willing to care for the child, CFSA has a custom of placing the child with the relative informally, rather than following the legally-required removal and placement procedures. CFSA routinely directs or pressures the relative to file an emergency motion for legal and physical custody of the child

(which creates "familial status" under D.C. Code § 2-1401.02(11A)), including by threatening to place the child in foster care with a stranger if the relative does not agree to do so. Thereafter, CFSA refuses to provide the relative caregiver and the diverted child the benefits and services that CFSA provides to other foster families.

82. CFSA removed C.G.1, C.G.2, and C.G.3 and informally placed them first in the care of N.G., and second in the care of S.K. through kinship diversion. Although CFSA placed C.G.1, C.G.2, and C.G.3 in an out-of-state placement, CFSA failed to obtain approval for the placement from the local family services agency in either Texas or Maryland to ensure the placement was not contrary to the child's best interest. Further, CFSA failed to provide any benefits and services to either the children, N.G., or S.K., which caused significant financial and emotional harm.

83. CFSA has intentionally discriminated against Plaintiffs based on familial status by refusing to provide the same benefits and services, including the tangible benefit of foster care maintenance payments, it provides to foster families. CFSA's decision to selectively deny Plaintiffs the opportunity to receive these services and support is based solely on familial status. Accordingly, Defendants discriminated against Plaintiffs by denying them the tangible benefit of foster care maintenance payments based on the Plaintiffs' status in a protected class.

84. As a consequence of Defendants' acts or omissions, Plaintiffs have sustained damages and will sustain future damages in an amount to be proven at trial.

## COUNT V: NEGLIGENCE

85. Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

86. The D.C. Child Abuse and Neglect Act creates a special relationship between Defendants and D.C.'s abused and neglected children, imposing on Defendants statutorily-defined duties and responsibilities to, *inter alia*, "safeguard[] the rights and protect[] the welfare" of those children.

D.C. Code § 4-1303.01a. At all times Defendants owed C.G.1, C.G.2, and C.G.3 the duty to act with due care.

87.     Once Defendants identified C.G.1, C.G.2, and C.G.3 as children who had been abused or neglected and who could not be adequately protected in the parental home through the provision of services, Defendants owed a legal duty to C.G.1, C.G.2, and C.G.3 to act with due care in fulfilling their duties and responsibilities under the D.C. Child Abuse and Neglect Act and the Interstate Placement Compact to:

   (a)   remove C.G.1, C.G.2, and C.G.3 from their homes in compliance with statutorily mandated safeguards, § 4-1303.04(c);

   (b)   ensure that C.G.1, C.G.2, and C.G.3 were placed in a licensed or approved foster family home, §§ 4-217.02, 16-213;

   (c)   provide or arrange for appropriate services for C.G.1, C.G.2, and C.G.3, §§ 4-1301.09(b), 4-1301.02(3);

   (d)   prepare a case plan for C.G.1, C.G.2, and C.G.3 and their relative caregivers and ensure their status was reviewed periodically, §§ 4-1301.09(b)-(d), 4-1301.02(3);

   (e)   conduct or arrange for periodic visits of C.G.1, C.G.2, and C.G.3's placement to ensure such placement continued to be in the children's best interest, 42 U.S.C. §§ 671(a)(16), 675(5)(A)(ii); and

   (f)   provide monetary support on behalf of C.G.1, C.G.2, and C.G.3, § 4-217.01, CFSA, *Resource Parent Handbook* 93–95 (2018).

88.     Defendants' failure and refusal to properly discharge these responsibilities constitutes a breach of Defendants' duty of care.

89.     Defendants' breach of duty proximately caused injury to C.G.1, C.G.2, and C.G.3 in the form of emotional and financial harm, which injury was reasonably foreseeable.

## COUNT VI:  FRAUDULENT MISREPRESENTATION

90.     Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

91.     CFSA, through its agents, made false representations to N.G. and S.K. about their rights and responsibilities regarding C.G.1, C.G.2, and C.G.3, respectively, or willfully omitted material facts about those rights and responsibilities.  Pursuant to 42 U.S.C. § 671(a)(29), Defendants had a statutory duty to explain to N.G. and S.K. the options to participate in C.G.1, C.G.2, and C.G.3's care and placement, and Defendants' failure to provide such explanation constitutes a breach of this duty to disclose.  CFSA's agents knowingly made these false statements or willful omissions, or concealed the truth knowingly and with the intent to induce reliance on their misrepresentations or willful omissions. N.G. and S.K. reasonably and justifiably relied on the incomplete information and, as a result, took action that led to an egregiously unfair result for all Plaintiffs.

92.     In March 2019, CFSA asked N.G. to take custody of C.G.1, C.G.2, and C.G.3. CFSA concealed from N.G. her options to participate in the children's care and placement, including that CFSA could petition the D.C. Family Court for removal of the children and place the children with N.G. in a foster care placement following approval from the Texas Department of Family Services. CFSA concealed this material fact from N.G., which deceived N.G. into believing she needed file an emergency motion for custody of the children in order to be able to care for them.  N.G reasonably relied on the incomplete representations of CFSA, filed the emergency motion for custody, and has suffered emotional and financial harm as a result, in an amount of damages to be determined at trial.

93.    Further in July 2019, CFSA concealed from S.K. her options to participate in the children's care and placement, including that CFSA could petition the D.C. Family Court for removal of the children and place the children with S.K. in a foster care placement following approval from the Maryland local Department of Social Services.  S.K. reasonably relied on the incomplete representations of CFSA, assumed custody of the children, and has suffered emotional and financial harm as a result, in an amount of damages to be determined at trial.

<u>COUNT VII:  NEGLIGENT MISREPRESENTATION</u>

94.    Plaintiffs incorporate herein the allegations set forth in the preceding paragraphs of this complaint.

95.    Alternatively, even if CFSA did not know their representations to N.G. and S.K. were false and did not intend to deceive them, their misrepresentations were negligent.

96.    As averred in Par. 9291-93, the statements CFSA agents made to N.G. and S.K. were false or omitted material facts, as CFSA failed to inform N.G. and S.K. of their options to participate in the care of C.G.1, C.G.2, and C.G.3.  CFSA agents had a legal duty to disclose such information pursuant to 42 U.S.C. § 671(a)(29). Those statements or concealments concerned the material issue of the actions N.G. and S.K. needed to take in order to participate in the care of C.G.1, C.G.2, and C.G.3 and receive benefits, services, and support for providing such care. N.G. and S.K. reasonably relied on the advice of the CFSA agents to their detriment and suffered emotional and financial harm as a result, in an amount of damages to be determined at trial.

**VIII.  PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

      (a)    Issuance of a declaratory judgment that Defendants' custom and practice of kinship diversion, in particular the informal removal and placement through kinship diversion of C.G.1, C.G.2, and C.G.3 to N.G. and S.K., respectively, violates Title

IV-E of the Social Security Act, 42 U.S.C. §§ 670–679c, the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment, the D.C. Child Abuse and Neglect Act, the Interstate Placement Compact, and D.C. Human Rights Act;

(b)   Entry of a permanent injunction preventing Defendants from retaliating against N.G. and S.K. for seeking foster care maintenance payments;

(c)   Entry of a permanent injunction preventing Defendants from continuing the custom and practice of kinship diversion;

(d)   Award Plaintiffs compensatory damages in an amount equal to the total foster care maintenance payments that Plaintiffs would have received since the kinship diversion was effected, applying the current payment rate of $1,140 per child per 30-day period, plus interest, and other damages attributable to Defendants' violation of federal and D.C. law;

(e)   Issuance of an order that, for so long as C.G.1, C.G.2, and C.G.3, remain in the sole or primary physical custody of S.K., respectively, Defendants continue to pay to Plaintiffs an amount equal to foster care maintenance payments and other damages attributable to Defendants' violation of federal and D.C. law;

(f)   Award costs, and expenses for this action, including attorneys' fees; and

(g)   Award such further relief as this Court deems necessary, proper, and just.

A JURY TRIAL IS HEREBY DEMANDED.

Respectfully submitted,

*/s/ Samantha Badlam*
Samantha Badlam
D.C. Bar No. 977190
202-508-4734
samantha.badlam@ropesgray.com

Peter Brody
D.C. Bar No. 398717
202-508-4612
peter.brody@ropesgray.com

Scott McKeown
D.C. Bar No. 314459
202-508-4740
scott.mckeown@ropesgray.com

Ropes & Gray LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006


Marla Spindel
D.C. Bar No. 443306
202-360-7106
marla@dckincare.org

Stephanie McClellan
D.C. Bar No. 485658
202 550-4014
stephanie@dckincare.org

DC KinCare Alliance
1101 Connecticut Avenue, NW, Suite 450
Washington, DC 20006

*Attorneys for Plaintiffs*

Dated: March 17, 2020